# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| AMERICAN TOWERS LLC and | ) | |
| T-MOBILE NORTHEAST LLC, | ) | |
|  | ) | **Civil Action No.** |
| **Plaintiffs,** | ) | **17-10642-FDS** |
|  | ) | |
| v. | ) | |
|  | ) | |
| TOWN OF SHREWSBURY; | ) | |
| SHREWSBURY ZONING BOARD OF | ) | |
| APPEALS; and RONALD I. ROSEN, | ) | |
| LISA A. COSSETTE, PAUL M. GEORGE, | ) | |
| MELVIN P. GORDON, and DALE W. | ) | |
| SCHAETZKE, in their capacities as | ) | |
| members of the Town of Shrewsbury | ) | |
| Zoning Board of Appeals, | ) | |
|  | ) | |
| **Defendants.** | ) | |

_____)

## MEMORANDUM AND ORDER ON PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

**SAYLOR, J.**

This is a dispute over the proposed construction of a cell-phone tower. Plaintiffs

American Towers LLC and T-Mobile Northeast LLC propose to build a multi-carrier monopole-

style tower in Shrewsbury, Massachusetts. The property on which the tower is proposed to be

constructed is located in a zoning district that prohibits such construction. Plaintiffs applied for

variances from the zoning by-law to defendant Shrewsbury Zoning Board of Appeals, which

denied the application. Plaintiffs contend that that denial violated the Federal Communications

Act of 1934, as modified by the Telecommunications Act of 1996, Pub. L. No. 104-104, 110

Stat. 56 ("TCA").

Count 1 alleges that the town has effectively prohibited cell-phone service in violation of

47 U.S.C. § 332(c)(7)(B)(i). Count 2 alleges that the Zoning Board's opinion is not based on substantial evidence contained in a written record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii). Plaintiffs have moved for partial summary judgment on Count 2 only. Defendants filed a cross-motion for summary judgment on the same count.

The core of the dispute concerns the standard the Zoning Board was required to use to evaluate the application, and therefore what conclusions were required to be supported by substantial evidence. The Court concludes that the Board is not required—although it is encouraged—to take the TCA into account when evaluating an application for a zoning variance for the purpose of building a telecommunications facility. Rather, the Board need only evaluate the application under the applicable standard as set forth in state law or the local zoning bylaw. However, the Board may not simply parrot that standard; it must give specific reasons why the particular application before it does not meet that standard, in order to permit effective review in federal court. Because the Board failed to do that here, partial summary judgment as to liability will be granted as to Count 2.

Plaintiffs contend that a violation of the "substantial-evidence" requirement, without more, entitles it to a remedy of an injunction requiring the town to approve the variance. The Court is not convinced that such a violation should automatically result in injunctive relief. In any event, the Court will not impose a remedy at this time, but will await the disposition of the entire case.

## I.    Background

The following material facts are essentially undisputed.

### A.    Factual Background

American Towers LLC and T-Mobile Northeast LLC (collectively, "American Towers") entered into an agreement with the owners of 271 Spring Street, Shrewsbury, Massachusetts, to

lease a certain part of the property and construct a wireless communications facility there. (Rinne Decl. Ex. 2 at 1, Ex. 2 at Tab 2). American Towers seeks to construct a 149-foot multi-carrier monopole-style tower. (Rinne Decl. Ex. 2 at 2).

The property is in a Rural A Zoning district, which does not allow wireless communication towers and does not allow structures taller than 35 feet. (Rinne Decl. Ex. 1 at 2). No special-permit process is available. Thus, in order to build the planned tower, American Towers required (1) a use variance from Zoning Bylaw Table I (the Use Regulation Schedule), and (2) a dimensional variance from Zoning Bylaw Table II (Minimum Requirements and Maximum Conditions).

American Towers filed an application for a zoning variance with the Town of Shrewsbury Zoning Board of Appeals on January 4, 2017. (Rinne Decl. Ex. 1 at 1, Ex. 2 at Tab 1; *see* Shrewsbury Zoning Bylaw § IX(B)(2) (Amendments Through May 18, 2016) (allowing any person seeking a variance to appeal to the Board of Appeals)). The application contended that the proposal met the standard for a variance outlined in Mass. Gen. Laws ch. 40A, § 10 because "[t]he Site is unique owing to the shape and topography of the land and its location within the narrowly defined area within which a facility will provide the necessary coverage to fill significant gaps in T-Mobile's network," and "the size of the lot allows ample setbacks to lot lines, providing a natural buffer of distance and vegetation to adjoining properties and nearby roads." (Rinne Decl. Ex. 2 at 4).

The application included a report from Ryan Monte de Ramos, a radio frequency engineer, that stated the following:

> Based on the radio frequency studies, reports and computer models prepared in connection with this project, it is my professional assertion that there is inadequate network service available to existing and potential T-Mobile customers within the Town of Shrewsbury, especially along North Street, High

Street, Main Street, Spring Street and surrounding neighborhoods.

. . .

[I]t is my further professional opinion that T-Mobile would be able to achieve the coverage objective by filling these significant gaps in coverage through the installation of the [proposed wireless communications facility] at [271 Spring Street].

(Rinne Decl. Ex. 2 at Tab 4 ¶¶ 10-11). The application also included coverage maps showing existing T-Mobile LTE 2100 MHz coverage in the area, and the improved coverage that a tower on the proposed site would provide. (Rinne Decl. Ex. 2 at Tab 5).

The Board held a public meeting on January 30, 2017, to discuss the application. (Rinne Decl. Ex. 3). At the meeting, representatives of American Towers displayed the coverage maps. (Rinne Decl. Ex. 2 at Tab 5). In response to a question from a resident as to whether the white areas of the existing coverage map represented "no coverage whatsoever, or just no LTE coverage, a representative of the company explained that the gap in coverage was specifically "in-building" coverage: "You can probably get phone calls in the area. If you're in a vehicle, you're probably likely to maintain a call. But you would not get in-building service, say, in the buildings throughout the area. That's what the green depicts. Coverage, phone-wise, would probably be most of the map you see in the area." (Rinne Decl. Ex. 3 at 18:2-16).

During the January 30 meeting, Board Member Dale Schaetzke asked Edward Pare, the company's representative, to explain the claimed hardship:

BOARD MEMBER DALE SCHAETZKE: I understand you're looking for relief variance for three portions of our zoning bylaw, and I believe each of these would require that you demonstrate a hardship. Can you do that please?

EDWARD PARE: I can. So I think we have two, actually, one for use, and one for height, because your bylaw has kind of a funny—we're staying within the 150 feet for poles, but your underlying zoning district has a 35-foot height limit. So in case it's applicable, we ask for relief. So I think it's actually two, pursuant to your authority.

If you take a look at my materials, there's under Massachusetts State Law, which you're all used to dealing with, we have those hardship criteria that be related to the soil, topography, land, et cetera. But there is another one that's been developed over the years by the Federal Courts, and that is significant gap in coverage. So we have this federal law overlay, over state and local law. It's been recognized by a number of courts, including through the first circuit, so we can't always satisfy that direct state law link, but this superimposes—it's like an umbrella over that. So our hardship is really the significant gap in coverage.

(Rinne Decl. Ex. 3 at 15:21-16:22).

During the same meeting, an abutter requested a balloon test, in which American Towers would loft a balloon at the proposed location to the height of the proposed structure, take pictures from various locations in the town to establish how visible the structure would be, and use those pictures to create a simulation of what the tower itself would look like from different vantage points. (Rinne Decl. Ex. 3 at 17:14-20).

The meeting was continued pending the results of the balloon test. That test was conducted on February 14, 2017, and the results were included in the record. (Rinne Decl. Ex. 1 at 2, Ex. 4).

The public meeting resumed on February 27, 2017. (Rinne Decl. Ex. 5). Benjamin Caron, of Caron & Associates Design, explained how he conducted the balloon test and what the results showed. (Rinne Decl. Ex. 5 at 5:9-9:24). Pare and Mike Almada, a representative of American Towers, discussed the potential alternatives to the site that the company had considered, and why they were not feasible. (Rinne Decl. Ex. 5 at 12:19-14:12, 19:20-20:23, 28:22-29:9, 31:23-36:6, 43:21-44:16). During the part of the meeting open to public comments, many Shrewsbury residents spoke against the project, primarily for aesthetic reasons. (Rinne Decl. Ex. 5 at 23:25-24:14, 27:4-23, 29:18-30:2, 32:4-7, 36:9-37:2, 38:11-22, 44:19-45:3, 54:15-21, 60:5-17; *see also id.* Ex. 5 at 50:9-14 ("CHAIR RON ROSEN: Is there anyone here who is going to speak in support of this proposal? Okay, I was curious. Just curious. I think we've

received a bunch of emails that were also opposed.")).

At the close of the meeting, on February 27, the Board voted four-to-one to deny the variances.  (Rinne Decl. Ex. 1 at 2; *id.* Ex. 5 at 138:10-20).  The entire deliberation on the matter was follows:

> CHAIR RON ROSEN:  Okay, so 271 Spring Street, American Tower Corporation, T-Mobile Northeast, LLC.  I know where I'm going with this.
>
> BOARD MEMBER DALE SCHAETZKE:  And I know where I am, too.
>
> CHAIR RON ROSEN:  And I think it doesn't matter who goes first, I don't think there's anything to discuss.
>
> BOARD MEMBER DALE SCHAETZKE:  I don't believe they've demonstrated a hardship.
>
> CHAIR RON ROSEN:  Yeah, okay.  Can I get a motion.
>
> BOARD MEMBER DALE SCHAETZKE:  Move to deny.
>
> CHAIR RON ROSEN:  Second?
>
> BOARD MEMBER PAUL GEORGE:  Second.
>
> CHAIR RON ROSEN:  All in favor of the denial?
>
> MULTIPLE SPEAKERS:  Aye.
>
> CHAIR RON ROSEN:  Anyone opposed?
>
> BOARD MEMBER MELVIN GORDON:  Yes.
>
> CHAIR RON ROSEN:  Okay.  The only thing I'll—my editorial comment, we've only approved one cell tower, at least in the 10 years I've been around here.
>
> BOARD MEMBER LISA COSSETTE:  St. John's.
>
> CHAIR RON ROSEN:  St. John's, and they've decided not to execute it in a residential zone.  Next, Dunkin' Donuts variance, drive-up window.

(*Id.* Ex. 5 at 137:25-139:4).

On March 17, 2017, the Board filed a three-page decision denying the application with the Shrewsbury town clerk.  (Rinne Decl. Ex. 1).  In that decision, the Board made several

factual findings, including the following:

5) The proposed project would close a significant gap in T-Mobile's wireless coverage.

. . .

7) There are no existing structures within the identified coverage area available for co-location.

8) A "micro cell" distribution would not be effective for providing the desired indoor and outdoor coverage due to the technological limitations and costs of such systems.

. . .

10) The Board found that construction of a one hundred and forty nine foot (149') above ground level multi-carrier monopole-style tower and install nine (9) panel antennas (two antennas per sector) at the one hundred and forty five foot (145') above ground level centerline mark with associated equipment on the subject property would create a nuisance by virtue of noise, odor, smoke, vibration, traffic generated, unsightliness and other conditions detrimental to the public good.

11) The Board found that the Wireless Telecommunications Tower departed from and derogated from the intent and purpose of the Zoning Bylaw.

12) The Board found no unique conditions of the lot's size, topography, orientation, and shape, where strict compliance with the requirements of the Zoning Bylaw would be an undue hardship upon the appellant.

(Rinne Decl. Ex. 1 at 2).

B.     **Procedural Background**

Plaintiffs filed this lawsuit on April 14, 2017. The complaint contains two counts for violation of the TCA. Count 1 alleges that the Board's denial of the application for a variance effectively prohibits the provision of wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). Count 2 alleges that the Board's denial was not supported by substantial evidence contained in a written record, as required by 47 U.S.C. § 332(c)(7)(B)(iii).

Plaintiffs have moved for partial summary judgment on Count 2 and for summary judgment on the affirmative defenses contained in defendants' amended answer. Defendants

have cross-moved for summary judgment on Count 2.

## II.     Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57.

## III.    Analysis

### A.      State and Local Zoning Laws

The Massachusetts Zoning Act authorizes individual cities and towns to pass zoning bylaws, and describes the limits of that authority and the manner in which it may be exercised. *See* Mass. Gen. Laws ch. 40A, § 1 *et seq.*  The Zoning Act allows towns to regulate the maximum and minimum dimensions of structures and lots allowed in certain zoned areas.  It also

allows towns to regulate the uses to which land in a given area may be put. A town's zoning ordinance or bylaw may provide that a particular use is allowed in an area, allowed only by special permit, or not allowed at all. The Town of Shrewsbury has such a bylaw in effect. *See generally* Shrewsbury Zoning Bylaw (Amendments through May 18, 2016).

Where a use is allowed in a district by special permit, an applicant can seek such a permit from the board of appeals or the special permit granting authority.[1] The Zoning Act provides that "[s]pecial permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and shall be subject to general or specific provisions set forth therein; and such permits may also impose conditions, safeguards and limitations on time or use." Mass. Gen. Laws ch. 40A, § 9. The Shrewsbury Zoning Bylaw provides that a special permit for a particular use allowed only by special permit may be granted "upon satisfaction that said use is appropriate and that it will not create a nuisance by virtue of noise, odor, smoke, vibration, traffic generated, unsightliness or other conditions detrimental to the public good." (Shrewsbury Zoning Bylaw § IX(E)).

Where a particular use is not allowed in a district, a town's permit-granting authority nevertheless has the power to grant a variance. Mass. Gen. Laws ch. 40A, § 10. Although a town is not required to permit variances for prohibited uses, the Shrewsbury Zoning Bylaw generally allows use variances. *Id.* ("Except where local ordinances or by-laws shall expressly permit variances for use, no variance may authorize a use or activity not otherwise permitted in

---

[1] The "permit granting authority" is defined as "the board of appeals or zoning administrator." Mass. Gen. Laws ch. 40A, § 1A. The Shrewsbury Zoning Bylaw names the Town of Shrewsbury Zoning Board of Appeals as the permit-granting authority and grants it the power to decide appeals or petitions for variances. (Shrewsbury Zoning Bylaw § IX(A), (C)(2). Although most applications for a special permit would go to the Board of Appeals, certain types of special permits go to the Planning Board, which acts as the special-permit granting authority for those permits. (Shrewsbury Zoning Bylaw § IX(A)); *see also* Mass. Gen. Laws ch. 40A, § 9 (providing that certain classes of special permits may be issued by separate special-permit granting authorities).

the district in which the land or structure is located."); Shrewsbury Zoning Bylaw § IX(C)(2) ("Variance may be granted which would authorize a use or activity in the district in which the land or structure is located which is not otherwise permitted by this Bylaw."). The Zoning Act provides that the permit granting authority may grant:

> with respect to particular land or structures a variance from the terms of the applicable zoning ordinance or by-law where such permit granting authority specifically finds that owing to circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.

Mass. Gen. Laws ch. 40A, § 10.

Under Massachusetts law, the "'circumstances relating to the soil conditions, shape, or topography of such land' . . . must be the reason for any substantial hardship to the owner. Unless circumstances relating to the soil conditions of the land, the shape of the land, or topography of the land cause the hardship, no variance may be granted lawfully." *Tsagronis v. Bd. of Appeals of Wareham*, 415 Mass. 329, 331 (1993); *see also Whelan v. Zoning Bd. of Appeals of Norfolk*, 430 Mass. 1009 (2000); *Burgraff v. Zoning Bd. of Appeals of Phillipston*, 2012 WL 360483 (Mass. App. Ct. Feb. 6, 2012).

### B. Telecommunications Act

Overlaid on top of state and local zoning laws are the requirements of the federal Telecommunications Act. The TCA "imposes specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification" of telecommunications facilities. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115-16 (2005). It provides, among other things, as follows:

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof—

 (I) shall not unreasonably discriminate among providers of functionally equivalent services; and

 (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

. . . .

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(i) and (iii). Those federal provisions preempt state and local laws to the extent they conflict. *Brehmer v. Planning Bd. of Wellfleet*, 238 F.3d 117, 121-22 (1st Cir. 2001). The TCA further provides that other than the enumerated limitations, "nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A).

## C. The "Substantial Evidence" Standard

Plaintiffs seek summary judgment only on Count 2, on the theory that if the Board's decision is not supported by substantial evidence, that will entitle them to an injunction and Count 1, their effective-prohibition claim, will become moot. *See T-Mobile Northeast LLC v. City of Lawrence*, 755 F. Supp. 2d 286, 292-93 (D. Mass. 2010) (ordering an injunction allowing the construction of a cellular communications antenna after holding that the town's denial of a variance was not supported by substantial evidence without considering the plaintiff's claim that the denial effectively prohibited service).

The TCA requires two things when a local zoning authority denies an application to

construct a wireless facility: the authority's decision must be (1) "in writing" and (2) "supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). In this case, there is no dispute that the board's decision satisfied the "in writing" requirement. The issue, rather, is whether the board's decision was "supported by substantial evidence."

In order to comply with the TCA, the reasons for denying an application "need not be elaborate or even sophisticated, but rather . . . simply clear enough to enable judicial review." *T-Mobile South LLC v. City of Roswell*, 135 S. Ct. 808, 815 (2015). Courts recognize that "local authorities are frequently lay member boards without many resources," and consequently "do not require formal findings of fact or conclusions of law." *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 20-21 (1st Cir. 2002). "Nor need a board's written decision state every fact in the record that supports its decision." *Id.* at 21. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," taking into account "contradictory evidence in the record." *Green Mountain Realty Corp. v. Leonard*, 688 F.3d 40, 50 (1st Cir. 2012) ("*Green Mountain I*") (quoting *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 58 (1st Cir. 2001), *abrogated on other grounds by Roswell*, 135 S. Ct. 808).

However, a flexible standard is not the same as no standard at all. In particular, a board must provide the reasons for its decision; merely reciting the bylaw is insufficient to comply with the substantial-evidence requirement. *Lawrence*, 755 F. Supp. 2d at 291 ("A mere recitation of provisions of a local zoning ordinance does not constitute 'substantial evidence' under the Act."); *Sprint Spectrum L.P. v. Town of Swansea*, 574 F. Supp. 2d 227, 236 (D. Mass. 2008) (holding that the zoning board could not "ignore the requirements of the TCA by parroting Swansea's Zoning By-Law"); *Nextel Commc'ns of Mid-Atlantic, Inc. v. Town of Randolph*, 193 F. Supp. 2d 311, 318 (D. Mass. 2002) (criticizing the zoning board's decision as "pabulum" and

"conclusory statements"); *see also MCF Commc'ns, LLC v. Town of Portsmouth*, 2012 WL
6706935, at *2 (D.R.I. Dec. 26, 2012) ("Conclusory statements are insufficient to meet the
written denial requirement of the TCA.").

In determining whether a decision is supported by substantial evidence, the reviewing
court must consider the written record as a whole, and is limited to the administrative record
before the board. *Green Mountain I*, 688 F.3d at 50-51; *Plainville*, 297 F.3d at 22. The written
record may include more than the writing that conveys the denial if the "reasons are sufficiently
clear and are provided or made accessible to the applicant essentially contemporaneously with
the written denial letter or notice." *Roswell*, 135 S. Ct. at 811-12 (holding that the reasons in the
detailed written minutes of the hearing submitted 26 days after the bare-bones letter denying the
application were sufficiently part of the written record for denial).[2]

### D. Whether the Town Violated the "Substantial Evidence" Standard

As a practical matter, all of the evidence before the Board fell into one of two categories;
hardship (based on a gap in coverage) and unsightliness (based on the size of the tower).
Plaintiffs put forth evidence of hardship: essentially, that there was a gap in coverage and that
there were no feasible alternatives to close the gap. That evidence was based principally on the
topography of the area in question and the size of the structure (that is, the tower had to be of a
certain height to provide the desired services), not soil conditions or the shape of the lot.
Opponents of the project put forth evidence of unsightliness. There was no evidence that any

---

[2] The reviewing court must apply the substantial-evidence test to the reasons given by the board—"[a]
board may not provide the applicant with one reason for a denial and then, in court, seek to uphold its decision on
different grounds." *Plainville*, 297 F.3d at 21. Furthermore, a board's decision is not supported by substantial
evidence when the reasons for the denial are extraneous to the standard articulated by the zoning laws; the denial
must be tied to the applicable standard for granting a variance. *Industrial Tower & Wireless, LLC v. Haddad*, 109 F.
Supp. 3d 284, 298-300 (D. Mass. 2015) (citing *Town of Amherst v. Omnipoint Commc'ns Enters., Inc.*, 173 F.3d 9,
14 (1st Cir. 1999)).

noise, odor, smoke, vibration, or traffic would be generated by the proposed project.

The Board made several factual findings favorable to plaintiffs: it concluded that the tower "would close a significant gap in T-Mobile's wireless coverage"; that there were "no existing structures [such as steeples or other towers] within the identified coverage area available for co-location"; and that a "'micro cell' distribution would not be effective for providing the desired . . . coverage." (Rinne Decl. Ex. 1 at 2). Nonetheless, it went on to deny the application. It found that the project "would create a nuisance by virtue of noise, odor, smoke, vibration, traffic generated, unsightliness, and other conditions detrimental to the public good" (tracking the language of the by-law concerning special permits, which was not relevant to the question of whether plaintiffs should be granted a variance). (*Id.*). It further found that the project "departed from and derogated from the intent and purpose of the Zoning Bylaw" and that there were "no unique conditions of the lot's size, topography, orientation, and shape" such that compliance with the zoning requirement "would be an undue hardship" (essentially tracking the language of the statute concerning variances). (*Id.*). The Board did not address whether its denial might amount to an effective prohibition of cellular service, and expressed no view as to whether plaintiffs had shown that any alternative locations were feasible.

Plaintiffs contend that the Board did not comply with the statutory requirement that its decision be "supported by substantial evidence contained in a written record." *See* 47 U.S.C. § 332(c)(7)(B)(iii). Their principal argument is essentially as follows: (1) they demonstrated, without contradiction, a significant gap in coverage—indeed, the Board so found; (2) the Board's refusal to permit the closing of such a gap constitutes an "effective prohibition of wireless service" within the meaning of the TCA; and (3) the Board did not give any reason as to why its refusal to permit the variance did not constitute "effective prohibition"; therefore (4) the Board's

decision is not supported by substantial evidence contained in a written record.

### 1.   <u>Hardship</u>

Plaintiffs contend that under the FCA a significant gap in coverage is a hardship that zoning authorities must consider when ruling on applications for cell towers.  In support of that position, they rely primarily on *Nextel Communications of the Mid-Atlantic, Inc. v. Town of Wayland*, 231 F. Supp. 2d 396 (D. Mass. 2002).

In *Wayland*, the plaintiff sought a dimensional variance from the zoning bylaw's height restriction in order to build a wireless communications facility similar to that proposed here.  *Id.* at 405.  The zoning board denied the variance, explaining that "'[t]he hardship alleged by the applicant is related to its business plan of providing a certain amount of wireless coverage to the Town, rather than to the unique shape or topography of the Locus.'"  *Id.* at 407.

The court in *Wayland* criticized the board for failing to explain how the plaintiff would be able to provide sufficient coverage without the variance.  It then held as follows:

> Under the Telecommunications Act, the Board cannot deny the variance if in doing so it would have the effect of prohibiting wireless services.  47 U.S.C. § 332(c)(7)(B)(i)(II).  In other words, the need for closing a significant gap in coverage, in order to avoid an effective prohibition of wireless service, constitutes another unique circumstance when a zoning variance is required.
>
> . . .
>
> The Board's decision, particularly the second step in its analysis, fails to give due consideration to the requirements of the federal Telecommunications Act.  The Board's reasoning involved incorrect legal conclusions, which led to the incorrect factual conclusion that no unique circumstance existed that would require a zoning variance.  The decision, therefore, is not supported by substantial evidence and is in violation of 47 U.S.C. § 332(c)(7)(B)(iii).

*Id.* at 406-07.  Notably, the court went on to hold specifically that Wayland's regulatory scheme, as applied by the zoning board, had the effect of prohibiting wireless services in violation of the TCPA, which was a sufficient alternative ground to support the judgment.

It is true that the FCA requires a variance if the town's denial would be an effective prohibition of wireless service. It is also true that the FCA contemplates federal-court review of local zoning decisions, and requires a writing and a decision supported by substantial evidence in order to permit effective review. A local zoning board thus ignores evidence of a gap in coverage at its peril. Nonetheless, for the reasons set forth below, the TCA does not require a zoning board, when denying a particular application, to determine expressly whether that denial is an effective prohibition of service. Rather, the board need only evaluate the application for a zoning variance under the applicable standard as provided by state and local law.

First, the statutory text of the TCA does not purport to change the standard by which a local zoning board evaluates individual applications to construct wireless communications facilities. Instead, it provides several separate protections for telecommunications providers. One of those protections is that towns cannot "unreasonably discriminate among providers of functionally equivalent service"; another is that they cannot "prohibit, or have the effect of prohibiting," the provision of wireless service; another is that they must act on applications for authorization within a reasonable period of time; and another is that any decision denying a request to construct a facility must be in writing and supported by substantial evidence. *See* 47 U.S.C. § 332(c)(7)(B).

There is nothing in the statutory text to suggest that any one of those protections is connected to or dependent on any of the others. The requirement that a town's decision be supported by substantial evidence is a requirement intended to permit effective review by a federal court, not a standard for the granting of a variance. If Congress had wanted to require zoning boards to consider whether each decision had the effect of prohibiting service and to include that in the record, it could have done so expressly. Instead, it required a written decision

based on substantial evidence, and separately decreed that a town's "regulation" of towers shall not have the effect of prohibiting service. The Court is reluctant to read into the statute more than is explicitly required, especially where Congress also provided that "nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless services facilities." 47 U.S.C. § 332(c)(7)(A).

Second, the First Circuit has indicated that the appropriate standard for evaluating whether substantial evidence supports a zoning board's decision is the relevant state-law standard for granting a variance (or special permit). Although no cases have squarely reviewed the question of whether a gap in coverage must be considered by local boards in evaluating applications, the clear implication is that they are not required to do so.

Thus, in *Second Generation Properties L.P. v. Town of Pelham*, 313 F.3d 620 (1st Cir. 2002), the court evaluated the carrier's claim (that the board's denial of a variance was not supported by substantial evidence) solely under New Hampshire law; it held that the board's conclusions that the carrier did not show the hardship was supported by the record and sufficient to defeat the carrier's substantial-evidence claim. *Id.* at 627-29. As to the carrier's effective-prohibition claim, the court explained that "[t]he TCA does not itself expressly authorize local zoning boards to consider whether individual decisions amount to an 'effective prohibition.'" *Id.* at 630. It noted, however, the board's implicit consideration of that issue (although according it no deference), because there "appear[ed] to be nothing in New Hampshire law to preclude a board from considering the issue." *Id.* at 630.

In *Southwestern Bell Mobile Systems, Inc. v. Todd*, 244 F.3d 51 (1st Cir. 2001), the court held that because one of the reasons given by the zoning board for denying a special permit was

supported by substantial evidence—namely, that the carrier did not satisfy a by-law requirement that the tower have minimal visual impact—the denial should be upheld. *Id* at 60 & n.3.[3] Again, the question of whether the zoning board's decision was supported by substantial evidence was undertaken entirely with reference to local law. *See id.* at 60-62. "'Substantial evidence' review under the TCA does not create a substantive federal limitation upon local land use regulatory power, but is instead 'centrally directed to those rulings that the Board is expected to make under state and local ordinance in deciding on variances, special exceptions, and the like.'" *Id.* at 58 (quoting *Town of Amherst v. Omnipoint Commc'ns Enters., Inc.*, 173 F.3d 9, 16 (1st Cir. 1999)). The carrier argued that the board's decision could not be supported by substantial evidence without evidence of an alternative site that would meet the local requirements. But the court explained that whether there were feasible alternatives was an entirely different question from whether the board's decision was supported by substantial evidence:

> We see nothing in the TCA that would support placing a burden upon the Board to present evidence that there were other sites available to Southwestern Bell with a lesser minimal visual impact. The "substantial evidence" requirement does nothing more than allow applicants to overturn denials if they can prove that the denial lacks adequate evidentiary support in the record. Although that substantial evidence requirement is complemented by the provision in the TCA that prevents a locality from prohibiting personal wireless services, *see Town of Amherst*, 173 F.3d at 16, the burden would be on Southwestern Bell, and not the Board, to provide evidence demonstrating that "further reasonable efforts [to secure a special permit to build a wireless facility] are so likely to be fruitless that it is a waste of time to even try." *Id.* at 14.

*Sw. Bell Mobile Sys.*, 244 F.3d at 63.

---

[3] *Southwestern Bell* was abrogated on other grounds by *T-Mobile South, LLC v. City of Roswell*, 135 S. Ct. 808 (2015). Essentially, *Southwestern Bell* had held that the "written decision" requirement of the TCA required the reasons for the denial to be contained in same document as the denial itself. 244 F.3d at 59-60. The Supreme Court relaxed that requirement, holding that "localities must provide or make available their reasons, but . . . those reasons need not appear in the written denial letter or notice provided by the locality" as long as they "are sufficiently clear and are provided or made accessible to the applicant essentially contemporaneously with the written denial letter or notice." 135 S. Ct. at 811-12. The rest of the *Todd* decision was undisturbed.

Other First Circuit guidance is along the same lines. *See, e.g.*, *ATC Realty, LLC v. Town of Kingston*, 303 F.3d 91, 94 (1st Cir. 2002) ("'The TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable zoning requirements.'" (quoting *Omnipoint Commc'ns MB Operations v. Town of Lincoln*, 107 F. Supp. 2d 108, 115 (D. Mass. 2000)); *Amherst*, 173 F.3d at 14 ("It is no answer to point to the requirement that individual decisions be based on 'substantial evidence,' for this surely refers to the need for substantial evidence *under the criteria laid down by the zoning law itself* (*e.g.*, for setbacks, conditions for variances, special exception requirements). If the criteria or their administration effectively preclude towers no matter what the carrier does, they may amount to a ban 'in effect' even though substantial evidence will almost certainly exist for the denial. . . . But the burden for the carrier invoking this provision is a heavy one: to show from language or circumstances not just that *this* application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time to even try." (citations omitted)); *cf. Green Mountain I*, 688 F.3d at 50-55 (considering questions related to the effective prohibition of service under the substantial-evidence standard where the town's bylaws themselves incorporated criteria relating to adequacy of existing services and the feasibility of alternatives).

Other circuits have explicitly held that a board need only consider the state and local standard for granting zoning relief. *See, e.g., T-Mobile Central, LLC v. Unified Gov't of Wyandotte Cty.*, 546 F.3d 1299, 1307 (10th Cir. 2008) ("Substantial evidence review does not create a substantive federal limitation on local land use regulatory power. . . . Accordingly, this Court must look to the requirements set forth in the local zoning code to determine the substantive criteria to be applied in determining whether substantial evidence existed to support

the Board's decision."); *U.S. Cellular Tel. of Greater Tulsa L.L.C. v. City of Broken Arrow*, 340 F.3d 1122, 1133 (10th Cir. 2003) (same); *VoiceStream Minneapolis, Inc. v. St. Croix Cty.*, 342 F.3d 818, 830 (7th Cir. 2003) (quoting *Sw. Bell* and *Kingston*); *MetroPCS, Inc. v. City & Cty. of San Francisco*, 400 F.3d 715, 723-24 (9th Cir. 2005) ("[T]he substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable *state and local law*."); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999) ("[T]he TCA does not 'affect or encroach upon the substantive standards to be applied under established principles of state and local law.'" (quoting *Cellular Tel. Co. v. Zoning Bd. of Adjustment*, 24 F. Supp. 2d 359, 366 (D.N.J. 1998))); *Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus*, 197 F.3d 64, 72 (3d Cir. 1999) ("In the context of § 332(c)(7)(B)(iii), the decision process itself is governed by applicable state and local zoning laws. The reviewing court's task is to determine whether the decision, as guided by local law, is supported by substantial evidence.").

Finally, incorporating a duty to consider an effective-prohibition claim into the substantial-evidence requirement of the TCA seems to clash with the overall regulatory scheme. The two different types of claims (that is, effective prohibition and failure to provide substantial evidence) are judged according to different standards, and on a different record.

To demonstrate an effective-prohibition claim based on the denial of a particular proposal, the proponent of the tower has the burden to show "'that further reasonable efforts are so likely to be fruitless that it is a waste of time to even try.'" *Plainville*, 297 F.3d at 20 (quoting *Amherst*, 173 F.3d at 14)); *see also Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30 (1st Cir. 2014) ("*Green Mountain II*"). The Court reviews the evidence *de novo*, and is not limited to

the record before the zoning board. *Plainville*, 297 F.3d at 22. While an individual denial by a zoning board might amount to an effective prohibition, the information necessary to make that determination is broader than the particular site for which approval is sought—it presumably includes information about the town's regulatory scheme, the feasibility of other possible locations, and so on. *Amherst*, 173 F.3d at 14 ("Obviously, an individual denial is not automatically a forbidden prohibition violating the 'effects' provision. But neither can we rule out the possibility that—based on language or circumstances—some individual decisions could be shown to reflect or represent, an effective prohibition on personal wireless services.").

To demonstrate a "substantial evidence" claim, on the other hand, a plaintiff need only establish that the particular decision by the zoning board in a given case was not in writing or not supported by substantial evidence. Absent procedural irregularity, the record is limited to that before the board. *Plainville*, 297 F.3d at 22.

Those different standards of review appear to reflect a judgment that deference is due to the zoning board's specific decision about the appropriateness of a particular project, whereas the question of whether wireless service has been effectively prohibited is a question on which a lay zoning board has no particular expertise. *See Plainville*, 297 F.3d at 20-23; *Green Mountain II*, 750 F.3d at 39 ("[W]here a local authority purports to pass upon [effective prohibition], the federal courts afford it '[n]o special deference.'" (second alteration in original) (quoting *Pelham*, 313 F.3d at 630)).

The Court thus disagrees with the *Wayland* court, and concludes that the Board need not expressly consider the requirements of the TCA.[4] The relevant standard the Board must use to

---

[4] Although a handful of cases in this district have followed *Wayland*, they have done so without substantial analysis. *See T-Mobile Northeast LLC v. City of Lawrence*, 755 F. Supp. 2d 286, 291-92 (D. Mass. 2010) (citing *Wayland* for the proposition that "[f]ailure to give due consideration to the requirements of the TCA can also violate the substantial evidence requirement" and ruling for the plaintiff on the ground that that the board "utterly fail[ed] to

determine a variance is that set forth by state and local law, and this Court's substantial-evidence review is limited to the Board's decision under that standard.

## 2. **Adequately Articulated Reasons**

As stated above, § 10 of the Massachusetts Zoning Act provides the standard that an applicant must meet to obtain a zoning variance. Mass. Gen. Laws ch. 40A, § 10. Under Massachusetts law, "'circumstances relating to the soil conditions, shape, or topography of such land' . . . must be the reason for any substantial hardship to the owner." *Tsagronis*, 415 Mass. at 331. Again, the Board's decision here simply stated that "[t]he Board found no unique conditions of the lot's size, topography, orientation, and shape, where strict compliance with the requirements of the Zoning Bylaw would be an undue hardship upon the appellant" and that the proposed tower "departed from and derogated from the intent and purpose of the Zoning Bylaw." (Rinne Decl. Ex. 1 at 2). Plaintiffs contend that the Board's decision merely parroted the law without offering any supporting facts or analysis, and thus is insufficient to satisfy the requirements of the TCA.

As noted, it is not sufficient under the TCA for a board to simply recite the applicable

---

address any specific factors that relate [to] the requirements of the Ordinance"); *Sprint Spectrum L.P. v. Town of Swansea*, 574 F. Supp. 2d 227, 235-36 (D. Mass. 2008) (holding that the zoning board's decision that it did not have authority to grant a use variance was not supported by substantial evidence because it did not consider whether the denial of the variance would be an effective prohibition of wireless services, and stating that "defendants do not dispute that denying Sprint's application on procedural grounds, without determining whether the Board's action resulted in an effective prohibition of wireless services, violated the TCA"); *Nextel Commc'ns of the Mid-Atlantic, Inc. v. Town of Provincetown*, 2003 WL 21497159, at *8 (D. Mass. June 26, 2003) (holding that the decision was not supported by substantial evidence because the zoning board failed to consider whether its decision would violate the effective-prohibition clause *and* holding that, even if the board were not required to consider that, its decision was still not supported by substantial evidence for other reasons). *Swansea* and *Provincetown*, like *Wayland*, explicitly found that there was an effective prohibition of wireless services as well—only the court in *Lawrence* entered an injunction against the defendant without reaching that issue. None were appealed. And one case very similar to *Swansea* was decided the opposite way. *Omnipoint Commc'ns MP Operations, LLC v. Town of Lincoln*, 107 F. Supp. 2d 108, 115-16 (D. Mass. 2000) (holding that a board's determination that its zoning bylaw did not give it authority to grant the requested use variance, it was supported by substantial evidence); *see also Haddad*, 109 F. Supp. 3d at 299 (overturning a zoning board's decision because it was based only on the effective-prohibition prong of the TCA and failed to apply the standard in the local zoning bylaw).

22

legal standard.  *See, e.g., Lawrence*, 755 F. Supp. 2d at 291.  Here, the Board's written decision is arguably even worse than a mere parrot of the standard—it is a parrot of both the variance standard, without any further explanation, *and* the special permit standard, which does not even apply.  The Board first stated that construction of the tower would "create a nuisance by virtue of noise, odor, smoke, vibration, traffic generated, unsightliness and other conditions detrimental to the public good."  But noise, odor, smoke, vibration, and traffic were not remotely at issue in the proceeding.  And that is clearly the standard for a special permit, which is not relevant.

The Board's explanation of its decision under the variance standard is little better.  There is nothing in the record indicating the reasoning of the Board or the evidence on which it relied in reaching that result.  It is true that the TCA does not require local zoning boards to treat a substantial gap in coverage as an additional category of hardship under the Massachusetts variance standard.  And it is true that plaintiffs relied solely on the substantial gap in coverage as the basis of their claim of hardship.  But the application for a variance makes reference to the "shape and topography" of the land, and topography surely has a great deal to do with the siting of cell-phone towers and the suitability of any particular spot.  (Rinne Decl. Ex. 2 at 4) ("The Site is unique owing to the shape and topography of the land and its location within the narrowly defined area within which a facility will provide the necessary coverage to fill significant gaps in T-Mobile's network.").  The Board did not address whether the topography at issue created a hardship, and indeed did not discuss the claimed hardship at all.  Particularly in light of the complete absence of contradictory evidence in the record, the Court cannot ascertain whether that decision is supported by substantial evidence.

Even if the Court treats the portion of the meeting minutes containing the Board's brief deliberations as part of the "written" decision, *see Roswell*, 135 S. Ct. 808, there is nothing to

satisfy the standard. The only clue to the Board's reasoning is Board Member Dale Schaetzke's statement, "I don't believe they've demonstrated a hardship." (Rinne Decl. Ex. 5 at 138:8-9). There was no explanation of how the tower derogated from the purpose of the bylaw. And there was no statement—not even a single sentence—to describe how the particular circumstances here did not amount to an undue hardship.

The Court understands that local boards are not courts of law, and only enough detail is required to allow for effective judicial review. *Roswell*, 135 S. Ct. at 815; *Plainville*, 297 F.3d at 20-21. But judicial review under the substantial-evidence standard is "not a rubber stamp." *Green Mountain I*, 688 F.3d at 50 (quoting *Penobscot Air Servs., Ltd. v. Fed. Aviation Admin.*, 164 F.3d 713, 718 n.2 (1st Cir. 1999)). And the Board's bare-bones decision is not "sufficient explanation of the reasons for the denial 'to allow a reviewing court to evaluate the evidence supporting those reasons.'" *Plainville*, 297 F.3d at 21 (quoting *Sw. Bell*, 244 F.3d at 60).[5]

The Court further notes that although it is by no means required to do so, a local zoning board is not prohibited from considering whether its decision in a particular case would amount to an effective prohibition on the provision of wireless services. *See Pelham*, 313 F.3d at 630 ("Since board actions will be invalidated by a federal court if they violate the effective prohibition provision, many boards wisely do consider the point."). A local zoning board may thus choose to take on the effective-prohibition issue and thereby retain substantial control over where and how cell towers are built within its borders. But if it chooses to pass on that question, it runs the risk that an individual decision might be held to be an effective prohibition, and it may

---

[5] Defendants spent a great deal of their brief arguing that the Board properly denied the variance because plaintiffs did not show that "the use is appropriate and that it will not create a nuisance by virtue of noise, odor, smoke, vibration, traffic generated, unsightliness or other conditions detrimental to the public good." (Def. Cross-Mot. for Summ. J. at 13-17). But, as discussed above, that is not the standard for granting a variance; instead, it is the standard for granting a special permit. (Shrewsbury Zoning Bylaw § IX(E)).

be forced to issue a variance without further discussion of alternatives. In any event, for present purposes it is enough to say that the reasons given here by the Board are plainly inadequate.

### 3. Remedy

Plaintiffs contend that once the Court finds that the Board's decision was not supported by substantial evidence, they are automatically entitled to an injunction forcing the town to issue the variance.

The Court recognizes that injunctions are the preferred form of relief under the TCA. *Plainville*, 297 F.3d at 21-22 ("The statutory requirements that the board act within 'a reasonable period of time,' and that the reviewing court hear and decide the action 'on an expedited basis,' indicate that Congress did not intent multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another. Instead, in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order . . . instructing the board to authorize construction.").  But the First Circuit has also indicated that remand may be appropriate under some circumstances.  *Plainville*, 297 F.3d at 24 ("While we can conceive of circumstances in which a remand may be in order—for example, an instance of good faith confusion by a board that has acted quite promptly—this case is not a candidate for remand to the board."); *Wellfleet*, 238 F.3d at 121 & n.5 (granting an injunction in part because "all relevant evidence was adduced at the initial hearing" and "the Planning Board unanimously found that Omnipoint's request satisfied the town zoning bylaws in all respects" and distinguishing another court's decision to remand on the ground that there had never been a determination in that case that the application complied with local zoning laws).  Moreover, *Lawrence* (following *Wayland*), appears to be the only authority that has directly granted an injunction based solely on a finding that a zoning board's decision was not supported by substantial evidence.  755 F. Supp. 2d at 292-93.  In all other cases, the court also found that

there had been an effective prohibition, which includes a finding that "any further reasonable efforts by [an applicant] are so likely to be fruitless that it is a waste of time to even try." *Plainville*, 297 F.3d at 24-25.

Of the various limitations on local zoning authorities in the TCA, the requirement that an individual decision on a particular application be supported by substantial evidence seems the least appropriate to form the basis of *automatic* injunctive relief. The substantial-evidence standard is a relatively deferential standard of review. As Congress appeared to recognize, local zoning boards are in the best position to make decisions about individual variance applications. Under some circumstances, at least, a board that failed to articulate its reasons should be provided an opportunity to remedy any defect and render a decision.

On the other hand, a violation of the substantial-evidence standard might warrant an injunction under some circumstances. To cite an obvious example, if it is clear that the board is hostile to an applicant and using an ambiguous or unsupported decision as cover for unreasonably obstructing a proposal, an injunction is likely appropriate.[6]

In any event, the Court is not prepared at this stage of the proceeding to issue an injunction, or otherwise determine the remedy. It has not resolved the effective-prohibition claim, which may be dispositive. And remand may be inappropriate, and may engender unnecessary delay. The Court will therefore defer consideration of what remedy is appropriate until after Count 1 is resolved.

---

[6] Here, one member of the Board made a statement during deliberations that could be read to express hostility: "The only thing I'll—my editorial comment, we've only approved one cell tower, at least in the 10 years I've been around here." (Rinne Decl. Ex. 5 at 138:21-24). And the Board engaged in no discussion, at least on the record, about its decision. But the Board did engage with the applicant and asked relevant questions during the hearings, it suspended the hearing to allow for a balloon test and took into account the results of that test, the decision was not a unanimous denial, and it even made specific factual findings in its decision that were favorable to plaintiffs, including that that proposed tower would close a significant gap in coverage, that there are no existing structures available for co-location, and that a "micro cell" distribution would not be an effective alternative.

### E.     **Affirmative Defenses**

Plaintiffs also seek summary judgment on the affirmative defenses contained in defendants' amended answer on the ground that defendants never previously raised or referred to those defenses in their denial decision or at the public hearings.  Those defenses appear to be relevant to Count 1, the effective-prohibition claim.  As discussed above, neither party is limited to the evidence contained in the record before the Board to make out or defend against that claim.  Therefore, the Court will not make any rulings as to the affirmative defenses at this time.

## IV.     **Conclusion**

For the foregoing reasons, plaintiffs' motion for partial summary judgment on Count 2 and the affirmative defenses is GRANTED in part as to liability for Count 2, and DENIED in part without prejudice as to the affirmative defenses and the remedy for Count 2.  Defendants' cross-motion for partial summary judgment on Count 2 is DENIED.

**So Ordered.**

/s/  F. Dennis Saylor
F. Dennis Saylor, IV
Dated:  June 22, 2018                                          United States District Judge